RULEY, JUDGE:
These claims for damages for personal injuries sustained by each claimant respectively, and for property damage to the 1966 model Cadillac automobile owned by the claimant, Paul F. Vinson, arise out of a single-vehicle accident which happened at approximately 10:00 P.M. on August 27, 1975, when that automobile collided with a concrete pier or abutment separating the two traffic lanes of W.Va.-U.S. Route 119 at a railroad underpass in Marmet, Kanawha County. At the time and place of the accident, Paul F. Vinson was driving his automobile with its headlights on, and his brother, Billie Joe Vinson, was riding in the right front seat. They were traveling in a general northerly direction from their former home in Logan to Cleveland where they then resided. Paul F. Vinson had driven through the underpass before and was familiar with it.
The claimants contend that the accident was caused by negligence on the part of the respondent in failing to repair several holes in the northbound lane of the highway south of the underpass, and in failing to warn motorists of their existence. Paul F. Vinson testified that those holes were two to three inches deep and about ten to fifteen inches “around”. Billie Joe Vinson described the highway at that place as a *220 “rough road”. Neither claimant saw the holes before the automobile struck the first one. Both claimants and other witnesses called in their behalf testified to the effect that at the time of the accident, there were no signs warning northbound drivers of any danger or hazard. Billie Joe Vinson testified that Paul said, “Brace yourself” when the car encountered the rough road and that the car hit the pier about three or four seconds later, Paul F. Vinson testified that, prior to striking the holes, he had been driving at a speed of 35 or 40 miles per hour. He also testified that, when he hit the holes, he hit the brakes, but they didn’t stop the car, adding that, “They didn’t hold the car back. The car kept going.” It is a rule of thumb that miles per hour may be converted to feet per second by multiplying the miles per hour by one and one-half. Thus, a vehicle traveling 35 miles per hour travels 52.5 feet in one. second, 157.5 feet in three seconds, and 210 feet in four seconds.
On August 2, 1975, a train had derailed and had fallen on Route 119 on the south side of the underpass causing extensive damage to the paved surface of the highway. The undisputed evidence is that from that date until a new surface was applied (sometime after August 27, 1975) the respondent made repairs, including patches, in that area several times each week. In addition, several employees of the respondent, the investigating police officer of the City of Marmet, J. W. Armentrout, and Dan Toney, an emergency medical technician employed by the Marmet Fire Department and Ambulance Service, testified to the effect that a warning sign or signs were erected (although there was divergence in their testimony as to the type of sign) and in place at the time of the accident warning northbound motorists of the rough or hazardous road. Jerry Easter, a foreman employed by the respondent, testified that a “Rough Road” sign had been erected facing northbound traffic at a point about one hundred yards south of the underpass. Messrs. Toney and Armentrout confirmed that testimony.
Significantly, Officer Armentrout testified that, incident to his investigation of the Vinson accident, he took a statement from Paul F. Vinson which read:
*221 “ ‘Going north on U.S. 119, I saw a sign, I hit my brakes, the car lights blinded me, and the car slid onto the dirt and rocks.’ ” (Emphasis supplied.)
Officer Armentrout also made the following answers to the following questions regarding a conversation with Paul F. Vinson at the Charleston Area Medical Center:
“Q Were the people, then, sitting right outside of the emergency room at Charleston Area Medical Center?
A Right, the driver was, right.
Q Okay. Do you specifically recall these words being said to you about signs, or do you recall them after reading your report that you submitted?
A I remember him saying something about he saw the signs.
Q Do you remember what signs he was talking about?
A They — he said he saw the sign just before he entered the construction site, and as well as I remember, the only signs that was there was the hazard signs.”
(Emphasis supplied.)
The duty owed by the respondent to motorists traveling upon state highways is a qualified one, namely,, reasonable care and diligence in the maintenance of its highways under all the circumstances. Cassel v. Department of Highways, 8 Ct. Cl. 254, at 259 (1971). The undisputed evidence respecting frequent repairs to the surface of the highway between the train derailment on August 2 and the claimants’ accident on August 27, 1975, precludes a finding that the respondent was negligent in failing to repair the highway. Although there is a substantial conflict in the evidence as to the existance of a warning sign at the time of the accident, the Court feels obliged (particularly in view of the statement made by Paul F. Vinson to Officer Armentrout, shortly after the accident happened, to the effect that he saw such sign) to resolve that conflict in favor of the respondent. It necessarily follows that the Court must conclude that the respondent was not guilty of negligence *222 which proximately caused the accident and, hence, deny these claims.
Claims disallowed.